**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**COLLEEN DOLAC,**

                              **Plaintiff,**

            **-v-**                                        **17-CV-1214V(Sr)**

**COUNTY OF ERIE,**
**ERIE COUNTY SHERIFF'S OFFICE,**
**CHRISTA CUTRONA, RN, MSN,**
**MICHAEL REARDON,**

                              **Defendants.**

---

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #8.

Currently before the Court is defendants' motion to dismiss plaintiff's complaint (Dkt. #7), and plaintiff's motions to amend her complaint. Dkt. #17 & Dkt. #18. For the following reasons, it is recommended that plaintiff's motions to amend be denied as futile and defendants' motion to dismiss be granted.

**BACKGROUND**

Plaintiff commenced employment with the Erie County Sheriff's Department in June of 1999 as a licensed practical nurse at the Erie County Holding Center. Dkt. #17-3, ¶ 16.

Plaintiff's husband was diagnosed with cancer of the esophagus in February of 2015. Dkt. #17-3, ¶ 20. Plaintiff was over 40 years of age at the time of his diagnosis. Dkt. #17-3, ¶ 28. Plaintiff utilized Family Medical Leave to care for her husband beginning in February of 2015. Dkt. #17-3, ¶ ¶ 21 & 26 & Dkt. #17-7, p.3. Upon her return to work in May of 2015, the Erie County Sheriff's Department failed to restore plaintiff to a position with equivalent benefits, resulting in a payment of back wages, liquidated damages, employment benefits or other compensation calculated by the U.S. Department of Labor totaling $524.98. Dkt. #17-3, ¶ 73 & Dkt. #17-14.

Plaintiff renewed her request and was granted FMLA leave in January of 2016. Dkt. #17-3, ¶ 26 & Dkt. #17-7, pp.6-8 & Dkt. #17-11, p.2. Plaintiff's FMLA leave was exhausted as of August 10, 2016. Dkt. #17-8, p.2 & Dkt. 17-11, p.3 & Dkt. #17-13, p.8.

By notice dated September 14, 2016, a disciplinary hearing was set for September 19, 2016 to address allegations that plaintiff violated policy and procedure regarding notification of absence from work and was, therefore, absent without leave. Dkt. #17-3, ¶ 39 & Dkt. #17-11, pp.4 & 6 & Dkt. #17-13, p.66.

On September 16, 2016, plaintiff submitted a prescription from her healthcare provider dated September 16, 2016 stating "off work DBL 9/15 - 10/2 return 10/3." Dkt. #17-3, ¶ 24 & Dkt. #17-10, p.2.

When plaintiff failed to appear at the disciplinary hearing on September 19, 2016, she was accused of being absent without leave and a disciplinary hearing was scheduled for October 3, 2016. Dkt. #17-3, ¶¶ 39 & 46 & Dkt. #17-11, p.6.

On September 27, 2016, plaintiff's health care provider issued a prescription stating "continue DBL until 10/24/16 RTW 10/25 no restrictions." Dkt. #17-3, ¶ 40 & Dkt. #17-10, p.3.

On September 30, 2016, plaintiff's union representative requested a postponement of the hearing because of "issues going on at home, which I'm sure everyone is aware." Dkt. #17-3, ¶ 55 & Dkt. #17-12, p.2.

Plaintiff failed to appear at the disciplinary hearing on October 3, 2016. Dkt. #17-3, ¶ 46 & Dkt. #17-11, p.6. The disciplinary hearing was rescheduled for October 24, 2016. Dkt. #17-11, p.6.

On October 20, 2016, plaintiff's health care provider issued the following note: "Continue disability until 11/7/2016." Dkt. #17-3, ¶ 40 & Dkt. #17-10, p.5.

On October 23, 2016, plaintiff asked a coworker to inform everyone that she would not be attending her hearing because she had not been cleared by her doctor to return to work. Dkt. #17-12, p.3. Plaintiff failed to attend the disciplinary hearing on October 24, 2016. Dkt. #17-3, ¶ 46.

Plaintiff was terminated from her employment on October 31, 2016. Dkt. #17-3, ¶ 30. The letter of termination states that plaintiff failed to contact the Administrative Office to notify the Erie County Sheriff's Office that she would not be present for her disciplinary hearings or to reschedule her disciplinary hearings. Dkt. #17-11, pp.6-7.

Plaintiff's husband died on November 17, 2016. Dkt. #17-3, ¶ 48. At the time of his death, plaintiff alleges that she was "under extreme emotional strain and pressure" because she "was her husband's main healthcare provider, providing him with all medications including narcotics, maintaining his feeding tube, toileting, bathing and comforting him while at the same time parenting five of their children who were then living at home with Plaintiff and her husband." Dkt. #17-3, ¶ 48.

Plaintiff filed a Charge of Discrimination with the EEOC on February 7, 2017, alleging discrimination based on age and disability, as well as retaliation. Dkt. #7-2. Plaintiff informed the EEOC that she

> complained to management about the treatment I was receiving because of my duties as my disabled spouse's caregiver. On or about early September 2016, I also requested a reasonable accommodation in the form of a leave of absence as directed by my physician due to my own disability and the disability of my spouse. On or about September 18, 2016, the Respondent retaliated by falsely accus[ing] me of being absent without leave. I was not properly compensated during that time. On or about October 31, 2016, while I was still on the leave of absence requested by my physician, I was terminated.
>
> I believe that I was falsely accused of being absent without leave and then terminated in retaliation for requesting a

leave of absence and complaining about age and disability
discrimination in willful violation of the [ADEA] and [ADA].

Dkt. #7-2.

The EEOC terminated its processing of plaintiff's charge of disability

discrimination and closed plaintiff's complaint of age discrimination, issuing Notice of

Right To Sue, on request, dated August 28, and September 25, 2017. Dkt. #17-6, pp.2-

4.

Plaintiff, represented by counsel, commenced this action by filing a

complaint on November 25, 2017, alleging discrimination and retaliation in violation of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and

discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 *et seq.* Dkt. #1.

Defendants moved to dismiss the complaint on December 18, 2017. Dkt.

#7.

By Decision and Award dated January 16, 2018, an arbitrator determined

that the Erie County Sheriff's Office did not have just cause when it terminated plaintiff

and directed that plaintiff be immediately reinstated to her former position with full back

pay and benefits less any unemployment insurance payments she received, if any. Dkt.

#17-13, p.55. In reaching this conclusion, the arbitrator determined that the County of

Erie did not have just cause to terminate plaintiff for failing to properly report absences

and failing to attend her disciplinary hearings because plaintiff had submitted faxes from her medical provider excusing her from work and had made multiple contacts with her supervisors regarding her absences. Dkt. #17-13, p.31. The arbitrator also noted that "the record evidence demonstrates that prior to Ms. Dolac's husband becoming stricken with terminal cancer, she had amassed 699.9 hours of sick leave," characterizing that fact as "the record of an exemplary employee." Dkt. #17-13, p.41.

Plaintiff filed an amended complaint on February 9, 2018. Dkt. #14.

Plaintiff filed a motion for leave to file an amended complaint on February 15, 2018. Dkt. #17 & Dkt. #18. The proposed amended complaint seeks to add claims for disability and age discrimination in violation of New York's Executive Law § 296(a) (disability and age discrimination) and § 296(e)(disability retaliation) against the individual defendants. Dkt. #17-3.

Defendants respond that the motion to amend the complaint is premature given the legal issues presented on the motion to dismiss. Dkt. #20.

Plaintiff replies that the proposed amended complaint "clarifies and supplements deficiencies in the pleading by including more facts and supporting exhibits." Dkt. #21, p.5.

## DISCUSSION AND ANALYSIS

### Viability of Motion to Dismiss in light of Motion to Amend

As the amended complaint was filed more than 21 days after service of the motion to dismiss, plaintiff could not amend her complaint as of right under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. *See Ko v. JP Morgan Chase Bank, N.A.*, 730 Fed. Appx. 62, 64 (2d Cir. 2018). However, "there is no recognized rule under which a pending motion to dismiss renders premature any motion for leave to amend" under Rule 15(a)(2) of the Federal Rules of Civil Procedure. *Roller Bearing Co. of Am, Inc. v. American Software, Inc.*, 570 F. Supp.2d 376, 384 (D.Ct. 2008).  Where, as here, plaintiff seeks to amend her complaint while a motion to dismiss is pending, the Court may choose to deny the motion to dismiss as moot or it may consider the merits of the motion in light of the amended complaint. *Haag v. MVP Health Care,* 866 F. Supp.2d 137, 140 (N.D.N.Y. 2012)*.*

Given that the proposed amended complaint does not seek to add new defendants and defendants were afforded an opportunity to respond to the proposed amended complaint, the Court will consider the merits of the motion to dismiss in light of the proposed amended complaint. *See id.*  If the proposed amended complaint cannot survive the motion to dismiss, the motion to amend will be denied as futile. *Id.; See Lucente v. Int'l Bus. Machs. Corp.,* 310 F. 3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

**Dismissal Standard**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court may take judicial notice of documents in the public record, including records and reports of administrative bodies, such as the New York State Division of Human Rights or the Equal Employment Opportunity Commission. *Vale v. Great Neck Water Pollution Control Dist*., 80 F. Supp.3d 426, 433 (E.D.N.Y. 2015).

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A plaintiff is not required to plead specific facts establishing a *prima facie* case of employment discrimination as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). However, the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible and may, therefore, be considered in assessing whether there is sufficient factual matter in the complaint which, if true, provides the defendant with fair notice of plaintiff's claim, and the grounds on which it rests. *Kelly v. New York State Office of Mental Health,* 200 F. Supp.3d 378, 389 (E.D.N.Y. 2016).

**Timeliness**

Defendants argue that any alleged discrimination which occurred prior to April 13, 2016, exceeds the requirement that such allegations be presented to the EEOC within 300 days of the allegedly unlawful employment practice. Dkt. #7-3, p.4.

Plaintiff concedes that her 2015 use of FMLA, complaint to the US Department of Labor regarding her return to work and subsequent award of back pay is not actionable. Dkt. #15, pp.8-9.

**Disability Discrimination**

Plaintiff's proposed amended complaint alleges that as she "became mentally unable to work due to both the stress and depression that her husband's suffering as well as the caregiver demands placed upon her, [p]laintiff was taken out of work by her medical team." Dkt. #17-3, ¶ 23. Plaintiff adds that she "had become her husband's main caregiver, providing nearly all nursing care and administering all of his medications, including narcotics." Dkt. #17-3, ¶ 23. Plaintiff further alleges that she "was suffering from anxiety, depression and stress caused by her husband's metastatic cancer and her responsibilities of being her husband's main nursing care and support provider." Dkt. #17-3, ¶ 62. Plaintiff reiterates that she "was her husband's main healthcare provider, providing him with all medications including narcotics, maintaining his feeding tube, toileting, bathing and comforting him while at the same time parenting five of their children who were then living at home." Dkt. #17-3, ¶ 48.

Plaintiff believes "that her disability was actually substantially limiting of a major life activity, her ability to work." Dkt. #17-3, ¶ 58. Plaintiff alleges that she "was unable to work due to: her inability to keep her mind on her work; to make consistently accurate decisions involving the distribution of medications for dozens of inmates per shift; her depressed and anxious mood at times caused . . . her to breakdown and cry, as well as her general sense of being overwhelmed with stress." Dkt. #17-3, ¶`62. Plaintiff states that she "did not apply for a reasonable accommodation . . . as she did not require an on-the-job accommodation." Dkt. #17-3, ¶ 23. However, plaintiff believes that she "requested a reasonable accommodation in the form of a leave of absence as

directed by her physician due to her own disability and the disability of Plaintiff's husband (after Family Medical Leave was exhausted.)" and "when she submitted medical disability notes and made several telephone calls advising of her continued absence from work due to her disability."  Dkt. #17-3, ¶¶ 38, 40 &  60.

Defendants argue that plaintiff has not plausibly alleged that she is disabled or that she requested a reasonable accommodation due to her disability. Dkt. #7-3, p.16. To the extent that plaintiff is claiming disability due to the stress and depression that her husband's suffering caused her, defendants argue that such a temporary, non-chronic impairment does not constitute a disability. Dkt. #7-3, pp.6-8. Moreover, defendants argue that plaintiff's husband's illness, however tragic, cannot constitute a disability of plaintiff. Dkt. #7-3, p.7. Defendants also note plaintiff's own complaint alleges that she did not apply for a reasonable accommodation . . . as she did not require an on-the-job accommodation." Dkt. #7-3, p.9. Moreover, defendants argue that the nurse practitioner's vague note is insufficient to request an accommodation. Dkt. #17-3, p.9. In any event, defendants argue that it is impossible to argue that plaintiff could perform the essential functions of her job without going to work. Dkt. #17-3, p.9.

Plaintiff argues that she was clearly disabled during the months prior to her husband's death. Dkt. #15, p.9. Plaintiff argues that 29 C.F.R. § 1630.2(j)(1)(ix) provides that short term disabilities qualify as disabilities if they are sufficiently severe. Dkt. #15, p.11. Plaintiff believes that she provided her employer with sufficient

documentation to warrant an accommodation pursuant to the ADA. Dkt. #15, p.13. Plaintiff claims that the arbitrator determined that she had provided defendant with sufficient medical documentation to substantiate her disability. Dkt. #15, p.13.

As an initial matter, the arbitrator determined that the County of Erie did not have just cause to terminate plaintiff for failing to properly report absences and failing to attend her disciplinary hearings because the evidence demonstrated that plaintiff submitted notes from her medical provider excusing her from work and because plaintiff had called to report her absence from work and from the scheduled disciplinary hearings. Dkt. #17-13. Specifically, the arbitrator determined that "the evidence clearly shows that the Grievant repeatedly called to report her absences and complied with the County's rules for reporting absences. Dkt. #17-13, p.31. While recognizing that her husbands illness caused plaintiff health problems of her own, the arbitrator did not opine as to whether such problems rose to the level of a disability, let alone a disability pursuant to the ADA.

To state a claim for discriminatory discharge under the ADA, an employee must plausibly allege that: (1) she is a person with a disability within the meaning of the ADA; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) her employer refused to make such an accommodation. *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F. 3d 113, 118 (2d Cir. 2004); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). A disability is defined by the ADA as: (1) a physical or mental impairment that

substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 1202(2). Although recognizing that a finite unpaid leave of absence may be a reasonable accommodation in some circumstances, the Court of Appeals has noted the troublesome problem such an accommodation raises, *to wit*, the "oxymoronic anomaly" of "the idea that allowing a disabled employee to leave a job allows him to perform that job's functions," as well as "the daunting challenge of line-drawing it represents." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 185 n.5 (2d Cir. 2006); *See Smith v. North Shore-Long Island Jewish Health Sys.*, 286 F. Supp.3d 501, 525 n.22 (E.D.N.Y. 2018) ("Courts have consistently held regular attendance to be an essential function of employment.").

Even assuming, for the purposes of this motion, that plaintiff's allegations that she was suffering from anxiety, stress and depression plausibly alleges a disability within the meaning of the ADA.,[1] plaintiff fails to allege that her employer was aware that she was suffering from such conditions or that her employer was aware that such conditions constituted a disability under the ADA at any time prior to her termination. The Court notes that the medical documentation that plaintiff relies upon to excuse her absence from work (Dkt. #17-10), provides no detail as to the cause for plaintiff's absence. Although plaintiff attached a medical record diagnosing her with a sore throat to her proposed amended complaint, that record does not substantiate any claim of

---

[1] Depression may qualify as a disability under the ADA provided that the condition is not a temporary psychological impairment and that the condition substantially limits a major life activity. *MacEntee v. Int'l Bus. Machs*, 783 F. Supp.2d 434, 443 (S.D.N.Y. 2011), *aff'd* 471 Fed. App'x 49 (2d Cir. 2012).

anxiety, stress, depression or any other potential disability under the ADA, nor does plaintiff allege that this record, or any other notice of disability under the ADA, was proffered to her employer prior to her termination. Dkt. #17-15.

An employer cannot be found to have discriminated against a plaintiff because of her disability if the employer was unaware that the plaintiff was, in fact, disabled.  *Lewis v. Blackman Plumbing Supply, LLC*, 51 F. Supp.3d 289, (S.D.N.Y. 2014).  Moreover, mere knowledge that an employee suffered from a medical condition is insufficient to demonstrate that such condition was disabling pursuant to the ADA. *Moore v. Time Warner GRC 9*, 18 F. Supp.2d 257, 262 (W.D.N.Y. 1998). Furthermore, plaintiff concedes that she did not request a reasonable accommodation from her employer, suggesting only that her health care provider's notes excusing her absence from work should be deemed a request for a reasonable accommodation in the form of a leave of absence. Dkt. #17-3, ¶¶ 23, 38, 40 &  60. Generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. *Graves,* 457 F.3d at 184. "Plaintiff cannot hold Defendant liable for reasonable accommodations that [s]he never requested."  *DeMar v. Car-Freshner Corp*., 49 F. Supp.2d 84, 95 (N.D.N.Y. 1999). Accordingly, it is recommended that plaintiff's claim of disability discrimination based on failure to accommodate be dismissed  and that her motion to amend her complaint to assert a disability discrimination claim pursuant to the NYSHRL be denied as futile. *See Noll v. Int'l Bus. Machs. Corp.,* 787 F.3d 89, 94 (2015) (elements of disability discrimination claim under NYSHRL identical to those under the ADA).

**Associational Discrimination**

Plaintiff's proposed amended complaint alleges that she believes her employer discriminated against her due to her status as care giver for her husband and her husband's disability. Dkt. #17-3, ¶¶ 43 & 63-64. Moreover, plaintiff alleges that the "animus" for her termination revolves around an additional period of extended sick leave afforded under the collective bargaining agreement and the fact that plaintiff's cancer stricken husband was a beneficiary under the health insurance policy provided by her union contract. Dkt. #17-3, ¶¶ 65-66. By terminating her, plaintiff alleges that her employer "elected to save what it considered a sizeable sum of money for extended sick leave compensation . . . and health insurance payouts for [p]laintiff's terminally ill husband's medical bills." Dkt. #17-3, ¶ 68.

Plaintiff argues that her discharge was "due to her husband's disability and her employment during the time when her husband's disability caused Plaintiff to become disabled and lose extensive time from work, which is protected pursuant to 42 U.S.C. § 12112(b)(4). Dkt. #15, p.12.

42 U.S.C. § 12112(b)(4) prohibits the exclusion or denial of equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association. To sustain such an "associational discrimination" claim, a plaintiff must plausibly allege that: (1) she was qualified for the job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) she was known at the time to have a

relative or associate with a disability; and (4) the adverse employment action occurred

under circumstances raising a reasonable inference that the disability of the relative or

associate was a determining factor in the employer's decision. *Graziadio v. Culinary*

*Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016). In considering the type of circumstances

that might give rise to a reasonable inference that the disability of the relative or

associate was a determining factor in the employer's decision, the Court of Appeals

recognized three theories which would give rise to a claim of associational

discrimination:

> (1)    expense, in which an employee suffers adverse
>        action because of her association with a disabled
>        individual covered by the employer's insurance,
>        which the employer believes, rightly or wrongly,
>        will be costly;
>
> (2)    disability by association, in which the employer
>        fears that the employee may contract or is
>        genetically predisposed to develop the disability of
>        the person with whom she is associated; and
>
> (3)    distraction, in which the employer fears that the
>        employee will be inattentive at work due to the
>        disability of the disabled person.

*Id.*


Expense

In *Trujillo v. Pacificorp.*, the Court of Appeals for the Tenth Circuit

considered plaintiffs' claim that they were terminated from their employment because of

the healthcare costs associated with their child's cancer diagnosis. 524 F.3d 1149,

1154 (10th Cir. 2008). In the context of a summary judgment motion, the Court of

Appeals determined that plaintiffs had established a reasonable inference of

discriminatory motive to establish a *prima facie* case of associational discrimination by presenting evidence of the employer's "concerns about rising healthcare costs, numerous efforts to cut those costs, corporate monitoring of general healthcare costs and of [the child's] claim specifically." *Id.* at 1157. The Court of Appeals also noted that Mr. Trujillo was terminated within three weeks of his son's diagnosis, while Mrs. Trujillo was terminated within six weeks of the diagnosis, noting, "[c]lose temporal proximity is important in establishing a prima facie case of association discrimination." *Id.*

In *Larimer v. International Business Machine, Corp.*, the Court of Appeals for the Seventh Circuit, also in the context of a motion for summary judgment, considered that there was "no evidence that health benefits are in the budget of the unit . . . that employed and discharged Larimer," noting benefits could be in a unit's budget through a fringe-benefit allocation for each employee in the unit that is equivalent to the premiums for health insurance allocable to the employee, or, alternatively, with the dollar amounts actually paid in benefits to the unit's employees or their dependents. 370 F.3d 698, 701 (7th Cir.), *cert. denied*, 543 U.S. 984 (2004). The Court of Appeals noted that "[i]n the latter case, but not the former, the manager would care about the actual expense for health services to the relatives of an employee in his unit because that expense would be in his budget." *Id.* The Court of Appeals also considered that if the employer had a profit-sharing plan or paid bonuses based in part on company-wide performance, all employees who participate in such a plan or receive such a bonus would have a financial stake in the company's performance and thus a stake in the firing of an "expensive" employee. *Id.*

-17-

In a district court case, summary judgment was denied to the employer where plaintiff was terminated within a week of informing her employer that her husband would be quitting his job due to illness, raising the prospect that he would be added to the company's policy, where plaintiff demonstrated that the company's health care plan provider had informed the Vice President of the company that health care premiums had increased and would continue to increase as a result of "major health care claims" by plan participants. *Detwiler v. Clark Metal Prods. Co.*, No. 08-1099, 2010 WL 1491325, at *29 (W.D. Pa. Mar. 19, 2010).

In the instant case, plaintiff proffers no factual support for her conclusory allegations that she was terminated in order to save the County of Erie the cost of additional sick time provided under the collective bargaining agreement or costs of health care coverage for her terminally ill husband. Plaintiff does not allege that any of the individuals making the decision to terminate plaintiff were aware of plaintiff's insured status or the financial cost of her leave, or that they had any financial incentive to avoid the costs associated with those benefits. Moreover, plaintiff's husband had been diagnosed more than a year and half before the allegations set forth in the complaint. Accordingly, it is recommended that plaintiff's motion to amend the complaint to add a cause of action for associational disability based upon expense, be denied as futile.

Distraction

With respect to the third circumstance giving rise to a claim of associational disability, the Court of Appeals in *Graziadio* determined that plaintiff could

-18-

not sustain an ADA claim for associational discrimination and granted the employer's motion for summary judgment because plaintiff had not presented sufficient evidence that she was fired because her employer suspected distraction or concern for her chronically ill child would cause her to perform her duties as a payroll administrator inadequately, but had instead presented evidence that she was terminated because her employer felt she had taken too much leave from work to care for her son. 817 F.3d at 432. The Court of Appeals noted that although an employer cannot terminate the employee for unfounded assumptions about the employee's need to care for a disabled person, an employee who actually is sufficiently distracted at work that she would need an accommodation in work schedule would not be entitled to one under the ADA because "the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person." *Id.* at 432, n.11, *quoting Larimer,* 370 F.3d at 700.

Relying upon *Graziadio*, a district court dismissed a complaint alleging that plaintiff was unable to be at work because of a relative's disability, explaining, "[p]laintiff does not allege he was terminated because his employer felt he would be distracted at work; instead, he alleges he was explicitly unable to be at work for the entire work day, including after the end of his shift, as defendant required." *Kelleher v. Fred A. Cook, Inc.*, 17 CV 5424, 2018 WL 3611965, at *4 (S.D.N.Y. July 26, 2018).

As plaintiff has not alleged that her employer expressed any concern about her ability to perform her job duties when she was working, it is recommended

that plaintiff's motion to amend her complaint to assert a cause of action for associational discrimination based upon distraction due to her husband's disability be denied as futile.

### Disability Retaliation

Plaintiff's proposed amended complaint alleges that she was terminated in retaliation for her extensive use of FMLA leave.  Dkt. #17-3, ¶ 69.

Defendants argue that plaintiff's disability retaliation claim cannot be sustained.  Dkt. #7-3, p.5.

To state a claim for retaliation under the ADA, a plaintiff must plausibly allege that: (1) she was engaged in an activity protected by the ADA; (2) the employer was aware of the activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir. 2000).  The ADA's retaliation provision makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].  42 U.S.C. § 12203(a).

Requesting a reasonable accommodation for a disability constitutes protected activity under the ADA. *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002). As set forth above, however, plaintiff does not plausibly allege that defendants were aware that plaintiff was claiming to be disabled or that she was requesting a reasonable accommodation for such disability. Thus, there is no plausible allegation that defendants were aware that plaintiff was engaged in activity protected by the ADA. Accordingly, it is recommended that plaintiff's disability retaliation claim be dismissed and that her motion to amend her complaint to assert a claim of retaliation based on disability pursuant to the NYSHRL be denied as futile. *See Lewis v. Erie Cty Med. Ctr. Corp.,* 907 F. Supp.2d 336, 349 (W.D.N.Y. 2012) (elements of disability retaliation claim under NYSHRL identical to those under the ADA).

**Age Discrimination**

Plaintiff's proposed amended complaint identifies "four other registered nurses [over the age of 40] who, during the recent past were employed at the Erie County Holding Center, were wrongfully terminated and subsequently reinstated," as well as "four registered nurses [under the age of 40] who have been hired in the recent past" by the Erie County Holding Center. Dkt. #17-3, ¶¶ 34-35. Plaintiff's proposed amended complaint further alleges that discovery will demonstrate that plaintiff's replacement was substantially younger in age and will uncover a pattern and practice of replacing older, experienced terminated nurses with younger, inexperienced nurses. Dkt. #17-3, ¶ 36.

-21-

Defendants argue that plaintiff has failed to allege any facts to plausibly support her conclusory allegation that she was terminated because of her age. Dkt. #7-3, p.10.

Plaintiff argues that she believes she was singled out for termination by virtue of her age. Dkt. #15, p.5. Plaintiff also argues that her knowledge of four similarly situated nurses older than plaintiff who were terminated by defendants, combined with her knowledge of four recently hired nurses younger than plaintiff is sufficient to meet the minimum standards of *Swierkiewicz*. Dkt. #15, p.14.

To survive a motion to dismiss an age discrimination case brought under the ADEA or the NYSHRL, a plaintiff must allege facts to plausibly suggest that her employer took adverse action against her and that her age was the "but for" cause of that adverse action. *Marcus v. Leviton Mfg. Co., Inc.,* 661 Fed. App'x. 29, 31-32 (2d Cir. 2016), *citing Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). The Court of Appeals has assumed, without deciding, that "but-for" causation is also required to support a claim under the NYSHRL. *Id.* at 32, *citing Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 105 n.6 (2d Cir. 2010).

Plaintiff's assertions that employees within the protected class for the ADEA were terminated and employees outside of the protected class were hired are insufficient, without more, to survive a motion to dismiss. "The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."

*Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999). In

*Foster v. Humane Soc'y of Rochester and Monroe Cty, Inc.*, for example, the district

court determined that plaintiff's allegation that two other women over forty were fired

during 2009 and that she was replaced by a woman in her early thirties, failed to

suggest that plaintiff was let go on account of her age. 724 F. Supp.2d 382, 390

(W.D.N.Y. 2010). The district court noted that there were "no facts alleged concerning

the circumstances surrounding the termination of those other two employees," nor was

there any "indication of who made the decision to fire them, what if any reason was

given for their termination, or whether they were replaced by younger employees." *Id.*

Thus, plaintiff's allegations are insufficient to plausibly support a minimal inference that

her termination would not have occurred if plaintiff was not over 40. *See Epstein v.*

*County of Suffolk*, No. 14-CV-937, 2016 WL 4257349, at *4 (E.D.N.Y. Aug. 11, 2016);

*Nance v. City of New York*, No. 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July

14, 2011).  Accordingly, it is recommended that plaintiff's ADEA claim be dismissed and

that her motion to amend her complaint to assert an age discrimination claim pursuant

to the NYSHRL be denied as futile. *See Gorzynski,* 596 F.3d at 105, n.6 ("The law

governing ADEA claims has been held to be identical to that governing claims made

under the NYSHRL").

## **CONCLUSION**

For the foregoing reasons, it is recommended that plaintiff's motions to

amend her complaint (Dkt. #17 & Dkt. #18), be denied as futile and defendants' motion

to dismiss (Dkt. #7), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 28, 2018

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**